8339. BRYANT *v.* ELBERTON & EASTERN RAILWAY CO.

1. In order for a defendant to set aside a verdict and judgment on account of illness of a member of his family, he must not only show to the court that he had a meritorious defense to the action, but must go further and show the facts upon which such defense is based, so that the court can determine for itself whether, if the verdict and judgment were set aside, the verdict might be different on another trial.

2. An attorney employed in two different suits which involve the same issues, and in which the different interests of his clients are of the same character, may stipulate that the trial of one shall determine the issues in the other.

DECIDED JULY 23, 1917.

Motion to vacate judgment; from city court of Washington— Judge Wynne. December 9, 1916.,

*C. E. Sutton,* for plaintiff in error. *W. A. Slaton,* contra.

BLOODWORTH, J. Z. T. Bryant filed a petition in which he prayed that certain judgment against him in favor of the Elberton & Eastern Railway Company be "vacated and set aside," because of the following facts: At the appearance term of the court in which the original case was pending, the defendant, by his attorneys of record, filed his plea and answer in which he denied all counts of the plaintiff's suit, and demanded a trial by jury on the issues involved. He was not present when said case was called for trial, his attorney having told him that his case would not be tried. In his absence, and without his consent, his attorneys agreed for a jury to find a verdict against him, and agreed that his case should take the direction of a similar suit pending in said court, which it was expected would be carried to a higher court as a test case. Said agreement as entered into by his attorneys was beyond their authority. Said test case, which it was intended should be carried to a higher court, was "dropped as soon as judgment was rendered in the lower court." He had a good and valid defense to said suit;

and as soon as he learned of said judgment and execution against him he took steps to have the same set aside.

The Elberton & Eastern Railway Company answered, admitting that a verdict was rendered and judgment entered against petitioner as alleged, and alleging that the same was done under a written agreement that the case of petitioner should abide the result of a test case pending in said court; that judgment was rendered against the defendant in the test case, and the defendant in that case "having taken his case to the Court of Appeals of Georgia, for some reason unknown to this defendant, dismissed the same without any request on the part of this defendant, and without any consideration flowing from this defendant," and that it is proceeding in the instant case under its judgment and by reason of said agreement, which agreement was made by the attorneys of record for petitioner, who, "under the laws of Georgia, in view of the facts, had authority to make said agreement, and can not now avoid the results to him of the same." The court overruled the motion to set the judgment aside, and the defendant excepted.

1. On the trial of this motion to set aside the verdict the movant, Z. T. Bryant, testified as follows: "I employed Messrs. Colley & Colley of Washington, Ga., to represent me in the case, and they filed an answer for me. I told them I wanted a trial by a jury, and they asked for one in their pleadings. The case hung up in court for some time. I came to court regularly every term, expecting it to be tried. In September, 1915, on first Monday, being court day, I had a daughter seriously ill, at the point of death. My son and me both had a case in court. I left him at home in charge of my daughter, and to wait on the two physicians there, and came to town to court. I found that court did not open until 10 o'clock a. m., and so about 9:30 a. m. I saw my lawyer, Mr. Colley. I explained to him that I had a daughter at home seriously ill, and to see the judge and get me and my son excused. He advised me to go back home, as I would be certainly excused under the circumstances; and he promised to look out for the case and get it put off. I told him I wanted a trial by jury all the time, and never consented for anything else." Witness further testified: "As soon as the Wansley case [the test case] was settled, the railroad company notified me that they had an execution against me. I immediately went to see my lawyer about it. Mr. Colley was dis-

qualified by his agreement with the railroad company, made in September, and I employed Mr. C. E. Sutton, who brought this motion to vacate the judgment. Mr. Sutton obtained leave of absence from Judge Wynne of the city court until this fall; and this accounts for the delay in bringing the motion to vacate the judgment."

In the case of *Phillips* v. *Taber,* 83 *Ga.* 565, 571-572 (10 S. E. 270), the following rule is laid down: "In order for a defendant to set aside a verdict and judgment on the ground of his absence for providential cause, he must not only show that he was sick and unable to attend the court, and unable to give the court notice of his condition, but he must go further and show to the court that he had a meritorious defense to the action, and show by his affidavit or the affidavits of others, such facts as would render it improbable or at least doubtful that the plaintiff would be entitled to recover. It is not enough for him to swear that he has a meritorious defense to the action, without going further and showing the facts upon which such defense is based, so that the court can determine for itself whether, if the verdict and judgment were set aside, the result might be different on the next trial; because it would be useless to set aside a verdict and go through another trial to have the same verdict rendered by the jury. *Beall* v. *Marietta Paper Mill Co.,* 45 *Ga.* 28; *Cheney* v. *Walton,* 46 *Ga.* 432; *Massey* v. *Allen,* 48 *Ga.* 21; *Peacock* v. *Usry,* 52 *Ga.* 353; *Lumpkin* v. *Respess,* 68 *Ga.* 822; *Ferrill* v. *Marks,* 76 *Ga.* 21." This rule is quoted with approval in the case of *Jewell* v. *Martin,* 121 *Ga.* 325 (48 S. E. 929), where it is said, "The facts constituting such defense must be set forth distinctly." In the instant case the proof of petitioner did not measure up to requirements of the above rule; he did not show "such facts as would render it improbable or at least doubtful that the plaintiff would be entitled to recover;" nor was there any evidence "showing the facts upon which such defense is based, so that the court could determine for itself whether, if the verdict and judgment were set aside, the result might be different on the next trial." See also, *Pryor* v. *American Trust &c. Co.,* 15 *Ga. App.* 822 (84 S. E. 312) ; *Philip Carey Co.* v. *Sheppard,* 19 *Ga. App.* 368 (91 S. E. 444).

2. Section 4955 of the Civil Code of 1910, relating to attorneys at law, is as follows: "They have authority to bind their clients in

any action or proceeding, by any agreement in relation to the cause, made in writing, and in signing judgments, entering appeals, and by an entry of such matters, when permissible, on the dockets of the court; but they can not take affidavits required of their clients unless specially permitted by law." In the instant case Bryant insists that his attorney acted against his expressed desire and in his absence. In *Adkins* v. *Bryant,* 133 *Ga.* 465 (66 S. E. 21, 134 Am. St. R. 211), the first headnote is as follows: "A verdict and judgment rendered with the consent of counsel is binding upon the client, in the absence of fraud and collusion upon the part of the counsel with whose consent such verdict and judgment is rendered." In *Williams* v. *Simmons,* 79 *Ga.* 649, 654 (7 S. E. 133), Chief Justice Bleckley said: "When a suitor comes into court, competent to select counsel, and does select counsel, no matter who the suitor may be, or how much married, the counsel is there for the purpose of representing the client, and whatever the counsel assents to, the client assents to. There is full power on the part of the counsel to represent the client, and it is just the same as if the client were there in person; and it is no answer to a decree, a solemn judgment of a court, for the client to come in and say that the counsel misrepresented the client's interests, or did not represent the client's wishes. Let the client see that the counsel conforms to instructions, and if there is any injury by failure to do it, let the counsel answer for it, and not the other party." In the case of *Chapman* v. *Chattooga Oil Mill Co.,* 146 *Ga.* 91 (90 S. E. 713), the Supreme Court of Georgia said: "In an action upon a promissory note, the defendant filed a plea, but omitted to swear to it. At a term subsequent to the trial term, the defendant being absent, the plea was stricken, and judgment was rendered for the plaintiff. Twelve days after the court had adjourned for the term the defendant filed a motion to set aside the judgment and to reinstate the case. In the motion it was alleged, that the defendant had employed an attorney to represent him, that he had been informed by his attorney that his presence would not be necessary, and, being so advised, he did not attend court, on account of the illness of his wife, and that the attorney neglected the case and did not appear and represent the defendant at the trial. The prayer was that the judgment be set aside, that he be allowed to swear to his plea, and that the case be reinstated upon the docket

for trial. *Held,* that the motion was properly overruled." In the case of the *Commercial Union Assurance Co.* v. *Chattahoochee Lumber Co.,* 130 *Ga.* 191 (60 S. E. 554), the first headnote is as follows: "An attorney employed in two different suits against different parties, but involving the same issues, and the interest of his clients being of the same character in each, may stipulate that the trial of one may determine the issues in the other." In the case of *Jarrett* v. *McLaughlin,* 123 *Ga.* 256 (51 S. E. 329), it appears that all the claimants were represented by the same counsel, and they agreed with the plaintiff in fi. fa. that one only of the claim cases should be tried, and the other should abide its result. The Supreme Court held the parties to this agreement, saying: "The plaintiff in error voluntarily chose to consent that his case should abide the result of that brought to trial and final judgment, whatever that result might be or however erroneously or through whatever misfortune it might be reached; and therefore he stands in no better position than does the losing party to that case, as to whom the judgment therein is certainly final."

The attorneys employed by the petitioner having agreed in the original case to abide the final result of the Wansley case, he is bound by the result of that case, whatever that may have been. As when a woman marries a man she takes him "for better or for worse," so when the agreement was entered into to abide the result in the Wansley case, the defendant and his counsel took all chances of what that result might be. Counsel for the plaintiff in error insists that, his client never having consented to the agreement made, and it being in violation of his express consideration, the rule in *Longman* v. *Bradford,* 108 *Ga.* 572 (33 S. E. 916), should apply. Examination of that case will show that the attorneys who made their client a party to the litigation were neither expressly nor impliedly authorized to do so.

*Judgment affirmed. Broyles, P. J., and Jenkins, J., concur.*